METHODIST EPISCOPAL SOCIETY *v.* THE HEIRS OF SARAH HARRIMAN.

Trustees may apply to this court for aid and direction in respect to investments and change of securities.

IN EQUITY. The will of Sarah Harriman, dated November 28, 1868, and approved and allowed April 22, 1872, contains the following devise: " To the Methodist society in Goffstown, I give and bequeath all of my real estate in Goffstown to them, to have and to hold the same forever for a minister's home."

In 1841, said Sarah and her sister owning a Goffstown farm in common, an equal division thereof was made by the probate court. The chief part of the farm assigned to Sarah was at a short distance from the buildings. There were assigned to her a few square rods adjoining the house, a part of the barnyard and barn, the privilege of using water from two wells, a portion of the woodshed, granery, and other out-buildings, some of the rooms in the house, a portion of the cellar, one half of the entry ways, and certain rights of passage in the house and over the land adjoining the house to and from her land. The real estate thus set off to Sarah she owned till her death, when it had become dilapidated and worn out, and was worth $3,000 or more, its chief value being in the wood and timber standing upon it.

The plaintiffs are a very poor and feeble society, not able to build a house, or to make necessary repairs and improvements. For a minister's home, by reason of the character and condition of the property, it was at the time of Sarah's death, ever since has been, and will continue to be, substantially worthless to the plaintiffs and to everybody else. For the purpose of rent, it cannot be depended upon to produce more than enough to pay the taxes. For these reasons the plaintiffs, supposing they owned the property and had power to sell it, on January 18, 1873, voted to instruct the trustees of the society to sell it, " the interest of said property to be used to provide their preacher a home, support preaching," &c. In pursuance of this vote, the property was conveyed by deed to Green & Eaton, at the agreed price of $3,200; but one of the heirs of Sarah making some objection to the sale, the price has not been paid, but is ready to be paid for a good title. The plaintiffs pray that the deed may be ratified and approved, or that they may be authorized to sell, and allowed to retain the proceeds to be used for a minister's home for the society, or for the general use of the society, and for general relief.

The heirs of Sarah are eighteen in number. Notice of this suit was given by publication of a copy of the bill and order of notice, and by similar copies sent by mail. An appearance is entered for some of them; for others there is no appearance.

*Cross & Burnham,* for the plaintiffs.

*Briggs & Huse,* for some of the heirs.

ISAAC W. SMITH, J.    Two questions are presented for determination : 1. Has the court jurisdiction to decree a sale ?    2. Is a proper case presented to authorize such a decree ?

1. The devise is to the plaintiffs " to have and to hold the same forever *for a minister's home.*"    It is not a devise upon a condition precedent, not to take effect till the condition has been performed, nor is it a devise upon a condition subsequent, defeasible upon breach of the condition.    The estate devised is absolute, although held in trust for a charitable use ; and in the event of a failure to execute the trust, the charity will not fail, nor will the property revert to the testator's heirs.    *Chapin and wife* v. *School District*, 35 N. H. 445.

Counsel for the defendants have argued that the prayer of the plaintiffs cannot be granted, because the devise is expressed in the will to be " for a minister's home."    There is nothing in the terms of the will to exclude the idea that the proceeds of the property may be used to secure the same object, unless the law is held to be that property specifically devised for charitable uses is required to be kept in the specific form in which it is received from the testator, without any change or modification whatever.

By ch. 190, sec. 1, of the Gen. Stats., this court is authorized to " hear and determine according to the course of equity, in case of charitable uses, trusts," &c.

In the *Petition of the Baptist Church and Society of Londonderry*, 51 N. H. 424, it was held that " a court of equity has general jurisdiction of the subject of trusts ; and in case of doubt, a trustee may seek its aid and direction, and this direction it may give in respect to investment or the change of securities."    That was a case which very closely resembles this.    That church and society held certain real estate, devised in trust, " to be used as a parsonage, or the income thereof to be strictly devoted to sustain preaching."    The premises having become depreciated in value, and the income of the premises being largely absorbed in repairs of the buildings and fences, the devisees filed their petition praying for leave to sell the premises, and invest the proceeds and apply the income for the purposes required by the will; and the prayer of the petition was granted.

In *Wheeler* v. *Perry*, 18 N. H. 307, the bequest was of the income of two shares in the Locks and Canal Company at Lowell to Henry Perry for life, and upon his decease the same two shares to his heirs. Subsequent to the death of the testator, the company sold out its property and wound up its affairs; and upon the executor's filing a bill praying for the aid and direction of the court as to the disposition and investment of the proceeds of these two shares, it directed the proceeds to be reinvested in other securities.

In *American Academy of Arts and Sciences* v. *Harvard College*, 12 Gray 582, Count Rumford had donated to the plaintiffs $5,000 in United States three per cent. stocks, in trust, to apply the interest of the same biennially forever as a premium to the author of such discovery or improvement on heat or light as should in their opinion tend most to

promote the good of mankind, and any accumulations of the fund were directed to be invested in the same manner.

The plaintiffs in their bill, among other things, alleged that the direction to invest the accumulations of the fund in the stocks of the United States, had, by the diminution of the amount of said stocks, become inconvenient, and might soon become impossible, and, in addition to the other relief sought, prayed that the fund might be invested in certain other securities. In the decree, which was drawn by Shaw, C. J., it was recited as follows: " It also appears to the court that it would tend to promote the general charitable intent of the donor to allow the plaintiffs to invest the principal of the said fund in some safe and productive securities other than the stocks of United States; " and it was ordered that the fund be invested in certain other securities.

In the same case it was held that " charitable donations are to be liberally construed, with a view to promote and accomplish the general charitable intent of the donor."

In Massachusetts it has been frequently held that a trustee for charitable uses may under authority of the legislature sell the property discharged of the trust, and reinvest the proceeds in other property to be held for the same uses—*Pine St. Cong. Soc.* v. *Weld*, 12 Gray 581, *Sohier* v. *Trinity Church*, 109 Mass. 1—and that a sale under license granted by the supreme court, pursuant to statute, passed a good title. *Wells* v. *Heath*, 10 Gray 27; *American Academy* v. *Harvard College*, 12 Gray 582.

A change of securities or investments of trust estates is often necessary to prevent the depreciation or total loss of the trust property. It is for this very reason that a court of equity is called upon to interpose and decree a change of investments, that the property may be preserved and the benefit of it be secured to the beneficiaries. Suppose a trust fund to be invested in stocks that have become doubtful : is there no remedy to prevent further or a total loss ?—must the *cestui que trust* look on and see the property melt away before his eyes, and be told that there is no remedy because the property was specifically bequeathed ? It is to preserve and not to destroy the intention of the testator that a court will arrest the destruction of property so held in trust by decreeing a sale or change of securities.

2. Passing to the second question, the case finds that the plaintiffs are a very poor and feeble society, not able to build a house or to make necessary repairs and improvements. That for a minister's home, by reason of the character and condition of the property, it was at the time of the testator's death, ever since has been, and will continue to be, substantially worthless to the plaintiffs and to everybody else ; that for the purpose of rent, it cannot be depended upon to produce more than enough to pay the taxes.

Under this state of facts we have no hesitation in decreeing a sale of the property. The case does not find whether the sum of $3,200 offered by Green & Eaton is a fair price for the premises. We should perhaps be justified in assuming, in the absence of any state-

ment to the contrary, that it is.   There can be a rehearing upon this point at the next trial term, and the presiding judge can grant a decree ratifying and approving the conveyance of the premises to Green & Eaton, at private sale, for the sum of $3,200, or can decree a sale of the premises at public auction, as he in his discretion may deem best. The proceeds of the sale should be invested in such securities as the judge at the trial term may order, to be held as a fund, and the interest or income thereof may be used for providing a minister's home for the society; or, the proceeds of said sale may be invested in a home for a minister of said society.